# E. S. SANFORD v. WRIGHT, BARRETT & STILWELL COMPANY.[1]

June 29, 1923.

No. 23,396.

**Distribution of net profits—deduction from reserve fund allowed employer.**
1. At the end of a year during which there had been a profit sharing agreement between the employer and employes, there was a partial distribution of the net profits after deducting the agreed 6 per cent interest the employer should have upon its capital and surplus invested, but $67,000 of the net earnings was reserved for distribution three years later under a new agreement providing for first deducting "one half the loss and of any amount necessary to make up the six per cent." It is *held*: The employer was permitted to deduct only one 'half of the losses sustained during the three year period, but was entitled to deduct sufficient to make up six per cent interest upon the capital and surplus invested during the three years.

**Interest on reserve fund.**
2. The employer was not entitled to six per cent upon the $67,000 so reserved.

Action in the district court for Ramsey county for an accounting of plaintiff's share in a fund of $67,000. The case was tried before Hanft, J., who made findings and ordered judgment in favor of plaintiff for $2,120.29. Defendant's motion to amend the findings and conclusions was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*Moore, Oppenheimer, Peterson & Dickson*, for appellant.
*Briggs, Weyl & Briggs*, for respondent.

HOLT, J.
The defendant, a corporation engaged in an extensive business in St. Paul, for the year 1916 adopted a plan to share its net profits

[1]Reported in 194 N. W. 625.

equally with employes, first deducting 6 per cent on the capital and surplus invested. Plaintiff, the head of a department, was to receive under this arrangement 15 per cent of 55 per cent of 50 per cent. The capital and surplus invested for the year 1916 was $225,000, for in the agreement it is stated the interest at 6 per cent would be $13,500. At the end of the year the books showed the enormous profit of $112,979.20. But employes as well as employer appreciated that a large part of this book profit might be wiped out if the inflated and fluctuating war prices changed greatly before the stock on hand could be disposed of in the regular course of business. So the parties on January 1, 1917, agreed that from the net profits for 1916, $67,000 should be withheld for 3 years, and then shared, first deducting therefrom certain losses and interest on the capital and surplus invested during the 3 years. The agreement was in writing, and, as to plaintiff, stated that his share of the net profits for the year 1916 amounted to $1,534.50 which should be paid within a reasonable time. It was so paid. The agreement also contained these provisions:

"In addition to the net profits upon which the above amount is figured it is understood that Wright, Barrett & Stilwell Company had an apparent book profit by reason of increased value of merchandise on hand at the close of 1916 amounting to approximately $67,000 and that this increase in merchandise value will not be a definite earned profit until the expiration of 3 years from January 1st, 1917, or until such earlier time as in the judgment of the board of directors there has been a resumption of normal conditions in the paper business, the merchandise inventory to have become reduced to approximately the same tonnage as it stood January 1st, 1916, at normal prices. At such time there shall be taken into consideration any loss sustained during such period of readjustment of conditions.

"Wright, Barrett & Stilwell Company agrees to set aside sufficient of this $67,000 as an unadjusted bonus reserve to be held until the expiration of three years * * * At that time if Wright, Barrett & Stillwell Company shall not have sustained any loss and shall have received six per cent per annum from January 1st, 1917,

to that time on the capital and surplus invested the unadjusted bonus reserve shall be distributed, but should Wright, Barrett & Stilwell Company sustain any loss during said period, or should it not earn six per cent on capital and surplus invested, then one-half of the loss and of any amount necessary to make up the six per cent shall be deducted from the unadjusted bonus reserve before distribution. In distributing this bonus reserve the maximum amount E. S. Sanford is to receive is fifteen per cent of sixty-two per cent of $33,500."

The $67,000 were subject to two items of deductions, namely, losses sustained during the 3-year period, and to make up the 6 per cent on the capital and surplus invested. Throughout the document loss is treated as something distinct from the 6 per cent earning upon the funds invested by defendant. When the sentence next to the last above quoted is considered in connection with the whole instrument, we think it clearly appears that defendant was to receive from the undistributed $67,000 bonus reserve whatever amount was lacking in the net earnings to make up the six per cent interest per annum upon its invested capital and surplus during the 3 years. Neither the language of the agreement nor the evident intention of the parties as revealed therein justifies the conclusion that defendant was to receive only 3 per cent on its investment. We think the learned trial court erred in allowing defendant 3 per cent only. The item of losses may be viewed differently. As we take it, when this agreement was made the capital and surplus invested did not amount to more than $255,035.86. Six per cent on this sum for 3 years would in no event exhaust the bonus reserve of $67,000. But losses might occur to such extent as to more than exhaust the whole reserve. And as to losses the language is plain that if such there were in the 3-year period "then one-half" thereof shall be deducted from the bonus reserved. It is probable that the scrivener used the words "one-half" in connection with the "$33,-500" referred to in the last sentence above quoted as the maximum part of the reserved bonus to be distributed to the employes. But, if there be any ambiguity here, it is to be resolved against defendant, for the contract was in its interest, being a substitute for the one

more favorable to plaintiff of the previous year, and was drawn, no doubt, by its attorney or agent.

But the error in the interpretation of the agreement may be offset to some extent by what we deem an unwarranted allowance of interest on the undistributed bonus. The $67,000 of book profits represented an inflation in value of the stock on hand, and the parties anticipated that this might shrink and be entirely wiped out by a fall in prices. It was therefore reserved and set aside until the end of 3 years. In the meantime neither the employer nor the employes should be permitted to compute interest thereon. It would be manifest injustice to permit the employer to draw interest as on its capital or surplus for the one-half which belonged conditionally to the employes, and we think no part thereof should be considered either as capital or surplus invested. It is not entirely clear from the record what computation was made in respect to this interest. We infer that, in 1917, $20,000 was reserved for the bonus proposition, and $11,000 each of the following two years. If that be true, interest on $47,000 for one year, and interest on $56,000 for two years, should be deducted from the computed interest on capital and surplus to which defendant was held entitled during the waiting period. Because of the uncertainty concerning this feature of the case, the proper adjustment of the rights of the parties cannot be made in this court.

The order is reversed and the cause remanded to the court below for a modification of the findings, and for additional proof if necessary to permit a judgment in accordance with this opinion.